1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

UNITED STATES OF AMERICA,

Case No. CR16-300RSL

10

Plaintiff,

11

v.

12

AUBREY TAYLOR,

13

Defendant.

14
15
16
17

ORDER DENYING
DEFENDANT'S MOTION TO
DISMISS FOR *BRADY*
VIOLATION AND MOTION
FOR ORDER DISMISSING
SECOND SUPERCEDING
INDICTMENT BASED ON
PROSECUTORIAL
MISCONDUCT AND ABUSE OF
THE GRAND JURY

18
19
20

This matter comes before the Court on defendant Aubrey Taylor's motions to dismiss the Second Superseding Indictment for a <u>Brady</u> violation, Dkt. #133, and for prosecutorial misconduct and abuse of the grand jury. Dkt. #126.

21

**1. Background and Procedural History**

22
23
24
25
26
27
28

Defendant Aubrey Taylor was first indicted on November 2, 2016 for Conspiracy to Engage in Sex Trafficking of a Minor and Sex Trafficking of a Minor. Dkt. #16. A Superseding Indictment on May 3, 2017 charged defendant with Conspiracy to Engage in Sex Trafficking of a Minor, Sex Trafficking of a Minor (JF1) through Force, Fraud and Coercion, Sex Trafficking of AF1 by Force, Fraud and Coercion, and Sex Trafficking of AF2 by Force, Fraud and Coercion. Dkt. #48. A Second Superseding Indictment on February 7, 2018, charged defendant

with the four counts in the Superseding Indictment and one additional count, Sex Trafficking of AF3 by Force, Fraud and Coercion. Dkt. #98.

Defendant filed a "Motion For Order Dismissing Second Superseding Indictment Based on Prosecutorial Misconduct and Abuse of the Grand Jury" on July 3, 2018 ("Motion I"). Dkt. #126.[1] Additional sealed exhibits were filed on the same day, Dkt. #128, pursuant to the Court's Amended Protective Order. Dkt. #123. The government responded on July 10, 2018. Dkt. #132. Defendant also filed a second "Motion to Dismiss for Brady Violation" on August 2, 2018 ("Motion II"). Dkt. #133. The government responded on August 9, 2018. Dkt. #135; Dkt. #137.[2] Supplemental Memoranda were filed by defendant in Motions I and II on September 3, 2018. Dkt #146; Dkt. #145. The government responded to the Supplemental Memorandum in Motion II on September 10, 2018. Dkt. #152. An Additional Supplemental Memorandum in support of Motion I was filed on September 7, 2018. Dkt. #151. The government responded on September 14, 2018. Dkt. #156. A Notice of Supplemental Authority in support of both Motions was filed on September 23, 2018. Dkt. #160. A CD containing audio recordings was filed on the same day as a supplemental exhibit to Exhibit X to Motion I. Dkt. #161. Oral argument on Motions I and II was held on September 24, 2018. See Dkt. #162. A final Supplemental Authority In Support of Motions I and II was filed on November 2, 2018. Dkt. #165.

The Court addresses Motions I and II in a single order because the relief requested is the same, namely, dismissal of the Second Superseding Indictment.

## 2. Legal Standard for Dismissal of an Indictment

Federal courts may dismiss an indictment for two reasons. First, a court may dismiss an indictment if it "perceives constitutional error that interferes with the grand jury's independence and the integrity of the grand jury proceeding." United States v. Isgro, 974 F.2d 1091, 1094 (9th Cir. 1992), as amended on denial of reh'g (Nov. 25, 1992); accord United States v. Caruto, 663

---

[1] The Court granted leave to file an over-length brief. See Dkt. #127; Dkt. #140.

[2] Dkt. #137 contains sealed Exhibits to the government's Response in Opposition. See Dkt. #143.

F.3d 394, 397 (9th Cir. 2011). This is found where "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair, allowing the presumption of prejudice." Bank of Nova Scotia v. United States, 487 U.S. 250, 257 (1988). Constitutional error may also be found where the defendant "show[s] a history of prosecutorial misconduct that is so systematic and pervasive that it affects the fundamental fairness of the proceeding or if the independence of the grand jury is substantially infringed." Isgro, 974 F.2d at 1094 (citing United States v. Larrazolo, 869 F.2d 1354, 1357-58 (9th Cir. 1989)). The defendant must show "conduct that violates due process in such a way that it is "so grossly shocking and so outrageous as to violate the universal sense of justice."" United States v. Stinson, 647 F.3d 1196, 1209 (9th Cir. 2011) (quoting United States v. Restrepo, 930 F.2d 705, 712 (9th Cir. 1991)). It is limited to "extreme cases." Id. (quoting United States v. Gurolla, 333 F.3d 944, 950 (9th Cir. 2003)). The failure to disclose "evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Brady v. Maryland, 373 U.S. 83, 87 (1963). A Brady violation—as alleged by defendant in Motion II—is a "constitutional error" that may justify the dismissal of an indictment where "the prosecution's actions rise… to the level of flagrant prosecutorial misconduct." United States v. Chapman, 524 F.3d 1073, 1086 (9th Cir. 2008).

Second, even if the misconduct does not rise to the level of a constitutional error, "a federal court may dismiss an indictment pursuant to its supervisory powers." United States v. Ross, 372 F.3d 1097, 1107 (9th Cir. 2004), on reh'g in part, 138 F. App'x 902 (9th Cir. 2005) (citing Bank of Nova Scotia, 487 U.S. at 255). The supervisory powers doctrine "is premised on the inherent ability of the federal courts to formulate procedural rules not specifically required by the Constitution or Congress to supervise the administration of justice." Isgro, 974 F.2d at 1094 (quoting Larrazolo, 869 F.2d at 1358). They are the means by which the courts "fulfill their role in the criminal justice system… [by] establishing and maintaining civilized standards of procedure and evidence." Ross, 372 F.3d at 1107. (internal quotation marks omitted) (quoting McNabb v. United States, 318 U.S. 332, 340 (1943)). A court may use them "to remedy a

constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." Id. at 1210 (quoting United States v. Barrera–Moreno, 951 F.2d 1089, 1091 (9th Cir. 1991)). But it is not limited to these reasons. See id. (citing United States v. W.R. Grace, 526 F.3d 499, 511 n. 9 (9th Cir. 2008) (en banc)). A Court may only exercise its supervisory powers to dismiss an indictment if it finds that the defendant was "actually prejudiced by the misconduct." Isgro, 974 F.2d at 1094. Dismissal "is appropriate "if it is established that the violation substantially influenced the grand jury's decision to indict," or if there is "grave doubt" that the decision to indict was free from the substantial influence of such violations." Bank of Nova Scotia, 487 U.S. at 256 (quoting United States v. Mechanik, 475 U.S. 66, 78 (1986)).

In general, "the dismissal of an indictment on the basis of governmental misconduct is an extreme sanction which should be infrequently utilized." United States v. Owen, 580 F.2d 365, 367 (9th Cir. 1978). The power is "rarely invoked." United States v. De Rosa, 783 F.2d 1401, 1404 (9th Cir. 1986) (quoting United States v. Samango, 607 F.2d 877, 881 (9th Cir. 1979)). "Courts are rightly reluctant to encroach on the constitutionally-based independence of the prosecutor and grand jury." Samango, 607 F.2d at 881.

### 3. Motion II: Brady Violation

As defendant makes a single accusation in Motion II, compared with the multitude asserted in Motion I, the Court addresses Motion II first. The prosecution has an affirmative duty to disclose evidence favorable to a defendant. See Brady v. Maryland, 373 U.S. 83 (1963). In October 2014, HS used an iPod ("the iPod") to communicate with her family members and defendant's brother, Carl Taylor ("Carl"). See Dkt. #137 at 2. Defendant claims that the government has had possession of the iPod since January 2016, and has refused to produce it despite multiple requests from defense counsel. See Dkt. #133 at 1-2. He argues that the prosecution failed in its obligations under Brady and Local Criminal Rule 16.

There is no merit to defendant's contentions. HS provided the iPod to a detective from the Snohomish County Sheriff's Office on November 4, 2014. See Dkt. #152 at 2. The detective transferred it to FBI custody on February 18, 2015 without conducting a search of it, as there were no charges against defendant for the sex trafficking of HS at the time, and HS had not consented to a search. See id. The complaint against defendant was filed on May 4, 2016. See id. On March 13, 2017, Assistant Federal Defender Sean Gillespie, defendant's counsel at the time, sent an email to government counsel requesting the contents of the iPod. Government counsel responded on the same day, stating, "We do not have a download of the HS iPod data, but are attempting to do so. If we are able to, we will produce a copy to you." See Dkt. #152-1.

Almost a year later, on January 31, 2018, current defense counsel sent government counsel another email requesting the contents of the iPod. She responded on February 8, 2018. She stated that the iPod had not yet been extracted, but that the FBI planned to do so within a week. She recognized that defendant was "entitled to any Brady or impeachment evidence contained on the iPod," but also expressed concerns for HS's privacy. She therefore proposed making "the entire iPod available to [defense counsel] to review, either at the USAO (or at the FBI's forensic lab, if it is determined that the iPod contains any images that constitute child pornography). [Defense counsel] [could] then determine what, if any, data on the iPod [was] relevant" and the prosecution would produce it. See Dkt. #137-1.[3] Defense counsel did not respond in writing to this email. When government counsel raised the issue at a conference on February 15, 2018, defense counsel indicated that he would follow up at a later time. See Dkt. #137 at 3. On April 23, 2018, defense counsel sent government counsel another letter with the same request. See id. Government counsel responded on May 10, 2018, reiterating her proposal, and inviting defense counsel to make an appointment to review the iPod. See Dkt. #137-2 at 4.[4] Defense counsel did not respond, and instead filed Motion I on August 2, 2018. See Dkt. #133.

---

[3] The Court notes that defendant failed to mention government counsel's proposal in his discussion of the email dated February 8, 2018. See Dkt. #133 at 2.

[4] The Court notes that defendant failed to mention this response, either. See Dkt. #133 at 2.

Following the government's response to Motion I on August 9, 2018, defense counsel finally reviewed the iPod on August 13, 2018. See Dkt. #152 at 3. Government counsel did not at any time refuse to produce exculpatory evidence or fail in its discovery obligations. See Brady, 373 U.S. at 87.

In his Supplemental Memorandum filed on September 3, 2018, defendant also alleges that the production came "at a time far too late for [defendant] to adequately review the contents of the iPod, to conduct any defense investigation needed based on the expert analysis of the device, and to effectively use any exculpatory evidence found on the device either at any pretrial hearings or at trial." Dkt. #145 at 2. He argues that the government consistently failed to produce the evidence in a timely fashion when requested to do so. See id.

That is incorrect. At no time in this case has defendant been denied access to material evidence or disadvantaged by a delay in providing it. On January 4, 2017, trial was continued to June 19, 2017. See Dkt. #33. Mr. Gillespie sent an email to government counsel requesting the contents of the iPod on March 13, 2017. See Dkt. #152-1. Government counsel did not have the data at the time. See id. On April 10, 2017, over defendant's objection, Mr. Gillespie filed a motion to continue trial to October 30, 2017. See Dkt. #39. Hearing was set for May 2, 2017. See Dkt. #40. Mr. Gillespie withdrew as defendant's counsel on that date. See Dkt. #46. Federal Public Defender Vanessa Pai-Thompson was appointed as defendant's counsel on May 4, 2017. See Dkt. #51. An unopposed motion to continue trial was filed on June 14, 2017. See Dkt. #54. On June 19, 2017, trial was continued to January 22, 2018. See Dkt. #57. There is no record of any requests for the iPod by Ms. Pai-Thompson before her withdrawal as counsel on November 7, 2017. See Dkt. #94. Nor was the data available to be produced at that time. See Dkt. #137-1. Trial was again continued on December 6, 2017 to June 4, 2018. See Dkt. #97. Government counsel proposed making the iPod available for review by defense counsel by an email dated February 8, 2018. See Dkt. #137-1. Defense counsel did not respond until April 23, 2018, after the trial had again been continued to October 29, 2018. See Dkt. #116. On May 10, 2018, government counsel invited defense counsel to schedule an appointment for the review of the

ORDER DENYING DEFENDANT'S MOTIONS
TO DISMISS SECOND SUPERSEDING INDICTMENT - 6

iPod. See Dkt. #137-2 at 4. Defense counsel did not respond, but eventually reviewed the iPod on August 13, 2018. See Dkt. #152 at 3. This delay is not attributable in any way to the government, which has made the evidence available since at least May 10, 2018. Nevertheless, the Court granted defendant's motion to continue the trial from October 29, 2018 to February 19, 2019. See Dkt. #157; Dkt. #59. Defendant now has ample time to prepare. At no time in this case has defendant been expected to go to trial without the benefit of all the exculpatory evidence to which he is entitled. There has been no Brady violation. See Brady, 373 U.S. at 87.

Nor is there any merit to defendant's contention that the government violated its obligations by failing to produce a physical copy of the iPod until August 2018, when the data on it has been available since May 10, 2018. See Dkt. #145 at 3-4; see Dkt. 152-2. There is no ground for the dismissal of the Second Superseding Indictment. See Chapman, 524 F.3d 1073, 1090 (9th Cir. 2008).

### 4. Motion I: Prosecutorial Misconduct

In Motion I, defendant lists multiple instances of alleged prosecutorial misconduct that span three years. HS was arrested on October 30, 2014 at the La Quinta hotel in Wenatchee, Washington. She was interviewed by the Snohomish County Sheriff's Department on November 4, 2014. See Dkt. #126 at 2. FBI Agent Sara Blond ("Agent Blond") submitted a request to open an investigation against defendant for the sex trafficking of a minor on January 24, 2015. See id. at 3. On November 13, 2015, Agent Blond signed an affidavit as part of her application for a pen register for defendant's phone and AM's phone. A complaint was filed on May 4, 2016, with an affidavit signed by Detective Lovisa Dvorak ("Detective Dvorak"). See id. at 5, 25. After the first indictment was returned on November 2, 2016, Agent Blond signed an affidavit in support of an application for a search warrant regarding defendant's cell phones on February 3, 2017. See id. at 7. Defendant alleges that the request to open the investigation, the applications for the pen register and the search warrant, and the draft complaint all contained false statements. Agent Blond, HS, AM, LC, SC, DK, and TT also testified before the grand jury. Defendant claims that they committed perjury, and that the prosecutor knowingly presented false testimony to the

grand jury. He also claims that he was kept in state custody from June 15, 2016 to October 14, 2016 to avoid the requirements of Federal Rule of Criminal Procedure 5. See id. at 6-7.

Whether taken individually or cumulatively, see Dkt. #146 at 4, defendant's accusations do not rise to the level of a constitutional error or flagrant and prejudicial misconduct that warrants the dismissal of an indictment. See Ross, 372 F.3d at 1107.

With regard to the accusation that he was deliberately kept out of federal custody, defendant offers no evidence at all beyond his own conjecture. He merely recites the facts of his own incarceration and draws his own conclusions. See for e.g. Dkt. #126 at 6-7 ("[Defendant] was then transferred to the R.J.C. after Agent Blond and Detective Dvorak refused to take him into federal custody for an initial appearance before a magistrate judge. … These events were a ruse orchestrated by state and federal authorities to keep [defendant] in state custody and out of federal custody to avoid the requirements of Rule 5 and the Speedy Trial Act."). The Court's "goal [in dismissing an indictment] … [is] to protect the integrity of the judicial process … particularly the functions of the grand jury, from unfair or improper prosecutorial conduct." United States v. Chanen, 549 F.2d 1306, 1309 (9th Cir. 1977) (internal quotation marks omitted) (quoting United States v. Leibowitz, 420 F.2d 39, 42 (2d Cir. 1969)). Defendant's baseless accusations of a delay in bringing him before a magistrate do not necessitate this extraordinary remedy. See Samango, 607 F.2d at 881.

With regard to his accusations of perjury, defendant is correct that the "Due Process Clause of the Fifth Amendment is violated when a defendant has to stand trial on an indictment which the government knows is based partially on perjured testimony, when the perjured testimony is material, and when jeopardy has not attached." United States v. Basurto, 497 F.2d 781, 785 (9th Cir. 1974). If a "prosecutor learns of any perjury committed before the grand jury, he is under a duty to immediately inform the court and opposing counsel— and, if the perjury may be material, also the grand jury— in order that appropriate action may be taken." Id. at 785-86. However, defendant's support for these serious accusations consists only of a list of alleged

inconsistencies among the various interviews and documents on record and the testimony given before the grand jury.

Some of these are based on specific contradictions. For example, HS testified that she did not have any money on her while she was engaged in prostitution. See Dkt. #126, Ex. A at TAYLOR_032538. However, in her interview on November 4, 2014, she said that law enforcement officials had found $150 in her jacket. See id., Ex. C at TAYLOR_000495. Others are based on defendant's own speculation and leaps of logic. Before the grand jury, RB was asked why AM wanted to bring HS along to Wenatchee, when she typically "had problems with other girls being around." Id., Ex. VV at TAYLOR_033104. RB testified that she "[didn't] understand it, but… [she] guesse[ed] [AM] felt like she would make more money…" Id. Defendant argues in Motion I that "[t]he prosecutor knew why AM did not have a problem with HS… AM was not threatened by HS because HS was C-Note's girlfriend and there was no chance that HS could take [defendant] from her like TT or DK." Id. He cites to an interview on August 10, 2017, in which AM stated that she "and HS got along, and there was not a sense of rivalry between them." Id., Ex. JJ at TAYLOR_007228. AM did not mention C-Note, nor any fear of HS "taking" defendant away from her. Nonetheless, defendant argues that "[t]he prosecutor did not want the grand jury to hear this testimony about HS being C-Note's girlfriend. This is why she reminded RB that she was under oath." Id. at 106. The attributed motive is pure conjecture, and the argument itself misstates the record. The prosecutor reminded RB that she was under oath *prior* to this line of questioning. Id., Ex. VV at TAYLOR_03309. Finally, some of these inconsistencies are not based on any evidence at all, and are categorically denied by the government. See Dkt. #151 at 4 ("[Defendant] believes that agents… access[ed] emails between [defendant] and his Court-appointed counsel"); Dkt. #156 at 4-5.

Regardless, merely pointing out inconsistencies between the testimony given by witnesses before the grand jury, prior interviews conducted with those witnesses, and statements contained in the various affidavits that have been filed in this case does not establish the truth or falsity of one over the others. See United States v. Zuno-Arce, 44 F.3d 1420, 1423 (9th Cir.

ORDER DENYING DEFENDANT'S MOTIONS
TO DISMISS SECOND SUPERSEDING INDICTMENT - 9

1995), as amended (Feb. 13, 1995) ("… [Defendant] presents no argument or evidence for his proposition that the prosecutor knowingly put on false evidence, except for the contradictions between [the witnesses' testimony at the first and second trial]. This evidence does not conclusively prove that the prosecutor knew that the … testimony was false… Discrepancies in the testimony … could as easily flow from errors in recollection as from lies."). Defendant has failed to establish that any witnesses committed perjury at all, let alone that they did so with the knowledge and complicity of the prosecutor. See United States v. Kennedy, 564 F.2d 1329, 1338 (9th Cir. 1977) ("… [O]nly in a flagrant case, and perhaps only where knowing perjury, relating to a material matter, has been presented to the grand jury should the trial judge dismiss an otherwise valid indictment returned by an apparently unbiased grand jury."); Basurto, 497 F.2d at 784 (reversing the conviction because "[p]rior to the commencement of trial, [the witness] informed the Assistant United States Attorney prosecuting the case that he had committed perjury before the grand jury in important respects."); Bank of Nova Scotia, 487 U.S. at 261 ("… [T]he finding that the prosecutors knew the evidence to be false or misleading, or that the Government caused the [witnesses] to testify falsely, is clearly erroneous. Although the Government may have had doubts about the accuracy of certain aspects… this is quite different from having knowledge of falsity.").

Even if defendant were to succeed in proving that the witnesses committed perjury, he is not entitled to a dismissal of the Second Superseding Indictment. He cannot show that there was a constitutional error, because the alleged perjured testimony was immaterial. Nor can he show prejudice to a degree that would justify an exercise of the Court's supervisory powers. It matters little whether or not there is evidence that defendant specifically referred to AM as a "bottom," see Dkt. #126 at 24, whether HS was engaged in prostitution in one hotel or another, see id. at 13-14, 16, 50, 60-61, 95-97,[5] whether HS attended a Mariners baseball game or a Little League

---

[5] For example, Detective Dvorak stated in her affidavit to the complaint that advertisements for HS (as "Lydia") were posted on Backpage.com for the Tri-Cities area and then for the Seattle area. Defendant points out that in her interview on November 4, 2014, HS said that she only engaged in prostitution in Wenatchee. See Dkt. #126, Exhibit C at TAYLOR_000479. Similarly, Agent Blond stated in her request

baseball game, see id. at 51-52, or whether his brother, Carl, who has not been charged or indicted, is more blameworthy than he is, see id. at 35-44, to name a few examples. Frankly, some of defendant's arguments would likely have backfired. For example, AM was interviewed on January 31, 2017, February 18, 2017, March 31, 2017, and April 6, 2017. See id. at 109. On August 10, 2017, she was given the opportunity to review reports of her prior interviews and make corrections. Defendant alleges that some of these corrections were material and were not disclosed until a month prior to the return of the Second Superseding Indictment. See id. at 109. These include AM's correction to a previous statement that defendant "hit her 12 times in October 2012," to a statement that defendant "only hit her four times, not 12 times, and that this incident occurred the Sunday after Thanksgiving in 2012." Id; see also id. at 110-111.

This is not to say that none of defendant's arguments have merit. Some of them may, particularly with regard to his knowledge that HS was a minor, and his use of force, fraud, or coercion against some of the victims. But "[i]t would run counter to the whole history of the grand jury institution to permit an indictment to be challenged on the ground that there was inadequate or incompetent evidence before the grand jury." United States v. Williams, 504 U.S. 36, 54 (1992) (internal quotation marks omitted) (quoting Costello v. United States, 350 U.S. 359, 363-364 (1956)); Bank of Nova Scotia, 487 U.S. at 261 ("… [A]n indictment valid on its face is not subject to [a challenge to the reliability or competence of the evidence presented to the grand jury]. … [T]he mere fact that evidence itself is unreliable is not sufficient to require a dismissal of the indictment.") (citing United States v. Calandra, 414 U.S. 338, 344-45 (1974)). Defendant's accusations can be tested and dealt with appropriately at trial. A dismissal of an indictment at this stage is extremely rare. At oral argument on September 24, 2018, the Court asked defense counsel if he was aware of any cases in which an indictment was dismissed prior to the conclusion of a trial. See Dkt. #165 at 1. In response, defendant submitted a Supplemental

---

to open an investigation against defendant that HS was transported to various hotels in "Western Washington" by defendant and AM. See id., Ex. T at TAYLOR_000331. Defendant points out that the hotels were in Wenatchee and Tri-Cities, not Western Washington. See Dkt. #126 at 13-14.

ORDER DENYING DEFENDANT'S MOTIONS
TO DISMISS SECOND SUPERSEDING INDICTMENT - 11

Authority that cites to four cases in which an indictment was dismissed during a trial and prior to a conviction, but none in which it was dismissed prior to the commencement of trial, as he requests in Motion II. See Dkt. #165-1. The earliest dismissal was after the selection of a jury. See United States v. Diabate, 90 F. Supp. 2d 140, 143 (D. Mass. 2000). Moreover, all involve far more extreme cases of prosecutorial misconduct, namely, proven Brady/Giglio violations and witness intimidation. See for e.g. Chapman, 524 F.3d at 1090:

> The government … failed to even make inquiry as to conviction records, plea bargains, and other discoverable materials concerning key witnesses until after trial began. It repeatedly misrepresented to the district court that all such documents had been disclosed prior to trial. The government did not admit to the court that it failed to disclose Brady/Giglio material until after many of the key witnesses had testified and been released. Even then, it failed to turn over some 650 documents until the day the district court declared a mistrial and submitted those documents to the court only after the indictment had been dismissed. This is prosecutorial misconduct in its highest form; conduct in flagrant disregard of the United States Constitution; and conduct which should be deterred by the strongest sanction available.

In conclusion, there is absolutely no evidence of any prosecutorial misconduct, let alone that "so excessive, flagrant, scandalous, intolerable, and offensive as to violate due process." United States v. Edmonds, 103 F.3d 822, 825 (9th Cir. 1996) (citing United States v. Garza-Juarez, 992 F.2d 896, 904 (9th Cir. 1993)). The dismissal of the Second Superseding Indictment is unwarranted.

For all the foregoing reasons, defendant's motions to dismiss the Second Superseding Indictment for a Brady violation, Dkt. #133, and for prosecutorial misconduct and abuse of the grand jury, Dkt. #126, are DENIED.

DATED this 6th day of December, 2018.

Robert S. Lasnik
United States District Judge