UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

UNITED STATES OF AMERICA,

    Plaintiff,

v.

AUBREY TAYLOR,

    Defendant.

Case No. 2:16-CR-300-RSL

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS CELL PHONES AND DUFFEL BAG

This matter comes before the Court on defendant Aubrey Taylor's "Motion to Suppress Galaxy S5 and Galaxy S6 Cellphones, Their Contents, a Black Duffel Bag, and All Fruits of This Evidence." Dkt. #168.

## BACKGROUND

On December 8, 2015, defendant was arrested by the Kent Police Department ("KPD") on an outstanding warrant for suspected domestic violence. Id. at 2. The KPD was able to locate defendant through use of data obtained from a pen register, trap and trace device, and cell simulator for two cell phones that was authorized by the King County Superior Court on November 13, 2015. Dkt. #198 (Declaration of FBI Agent Sara Blond) at ¶¶ 3-4. One of these was for a Galaxy S5 cell phone ("the S5") from which numerous text messages had been sent to AM regarding prostitution-related activities. Id. AM's phone identified the user of the S5 as "Aubrey Veechee Taylor." Id. KPD officers seized the phone and held it as evidence. Id.; see

ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS CELL PHONES AND DUFFEL BAG - 1

Ex. A, Dkt. #170-1 at 9. Defendant was booked into the Maleng Regional Justice Center ("RJC"). Id. RJC property records show that he had a wallet, an ID, money and clothes on him at the time. See Dkt. #196 (Declaration of Andrea Williams) at ¶3. On January 11, 2016, at defendant's request, the RJC released his wallet and ID to TT. Id. On February 2, 2016, again at defendant's request, the RJC released power of attorney paperwork to DK. Id. RJC did not at any time have custody of the S5. Defendant was released on bond on February 17, 2016. Id. at ¶2. Other than a brief two-day period of incarceration in April 2016 at the South Correctional Facility ("SCF") in Des Moines, he remained at liberty until June 2016. Dkt. #195 at 3.

On June 15, 2016, he was arrested by KPD officers for violating a No Contact Order. Id. His Galaxy S6 cell phone ("the S6") and black duffel bag were seized and placed in evidence. Ex. A, Dkt. #170-1 at 29. He was booked into the City of Kent Corrections Facility ("CKCF"). Dkt. #195 at 3. He remained there until September 13, 2016, when he was transferred to the RJC. Dkt. #196 at ¶2. On October 14, 2016, he was taken into federal custody. Dkt. #195 at 3.

Defendant alleges that in June 2016, he sent an associate to retrieve his belongings, but the S6 and duffel bag were not released. Dkt. #168 at 2-3. The government states that "there is no evidence that [defendant] requested [the] return [of the S6] in June 2016 or any other time." Dkt. #195 at 10. On June 22, 2016, the KPD sent defendant a letter informing him that his chap stick, marijuana, jacket and hat were available for release. Ex. F, Dkt. #189-1 at 2. Defendant requested the return of this property, specifically listing out the four items mentioned in the KPD's letter. Id. at 5. He did not mention the cell phones or the duffel bag.

On February 3, 2017, the government obtained a search warrant for the S5, the S6, and the black duffel bag. The bag was searched on the same day. Ex. C, Dkt. #170-1 at 67.[1] On February 9, 2017, the FBI performed an extraction of the data on the S5, but was unable to extract data from the S6 because the version of Cellebrite software that they used could not

---

[1] The government does not intend to move to admit the duffel bag or its contents into evidence at trial. Dkt. #195 at 1. Defendant's motion is therefore moot with respect to the duffel bag.

ORDER DENYING DEFENDANT'S MOTION
TO SUPPRESS CELL PHONES AND DUFFEL BAG - 2

unlock the device. Id. at 53, 60; see Dkt. #197 (Declaration of John Powers) at ¶3. A new version of the software that made the extraction of the S6 possible was authorized for use by the FBI on August 30, 2017. Dkt. #197 at ¶4. An updated version was authorized on January 19, 2018. Id. On February 22, 2018, the FBI obtained a second search warrant for the S6 and extracted the data on it. Ex. D, Dkt. #170-1 at 75.

Defendant alleges that the search and seizure of the S5, the S6 and the duffel bag violated his Fourth Amendment rights because the length of time between their seizure and search was unreasonable and without lawful justification. Dkt. #168 at 3. He requests that they, their contents, and all evidence derived therefrom be excluded.

## **DISCUSSION**

"A seizure lawful at its inception can nevertheless violate the Fourth Amendment because its manner of execution unreasonably infringes possessory interests protected by the Fourth Amendment's prohibition on "unreasonable seizures."" United States v. Jacobsen, 466 U.S. 109, 124 (1984) (citing United States v. Place, 462 U.S. 696, 708 (1983)). "An unreasonable delay between the seizure of a package and obtaining a search warrant may violate the defendant's Fourth Amendment rights." United States v. Sullivan, 797 F.3d 623, 633 (9th Cir. 2015) (citing United States v. Van Leeuwen, 397 U.S. 249, 252–53 (1970)). The Court must "determine whether the delay was 'reasonable' under the totality of the circumstances, not whether the Government pursued the least intrusive course of action." Id. (quoting United States v. Hernandez, 313 F.3d 1206, 1213 (9th Cir. 2002). "These determinations are made on a case-by-case basis. Id. (citing United States v. Van Leeuwen, 397 U.S. 249, 253 (1970)). A seizure must last "no longer than reasonably necessary for the police, acting with diligence, to obtain the warrant." United States v. Song Ja Cha, 597 F.3d 995, 1005 (9th Cir. 2010) (quoting Illinois v. McArthur, 531 U.S. 326, 332 (2001)). In determining whether a search and seizure was reasonable, the Court must balance "the nature and quality of the intrusion on the individual's

Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion." Id. (quoting Place, 462 U.S. at 703).

### A. Seizure and Search of the Galaxy S5

There was a delay of fourteen months between the government's seizure of the S5 in December 2015 and the obtaining of a search warrant for it in February 2017. First, defendant does not dispute that the government had a legitimate interest in retaining and searching the S5. Sullivan, 797 F.3d at 633; see Dkt. #213 at 3-4. Data extracted from AM's phone showed that text messages had been sent from the S5 to AM regarding prostitution-related activities. Dkt. #195 at 5-6; see Dkt. #171-1.

Second, defendant would ordinarily have had a significant possessory interest in the S5. See Riley v. California, 134 S. Ct. 2473, 2488-89 (2014); United States v. Johnson, 875 F.3d 1265, 1275 (9th Cir. 2017). However, this interest was minimal during the delay because the government's intention was to retain the S5 as a physical item of evidence for trial. At the hearing held on February 7, 2019, the prosecution emphasized that the phone itself, apart from its data, constituted evidence of defendant's involvement in sex trafficking. See Dkt. #195 at 6. The government was therefore entitled to retain it in preparation for trial. Indeed, it stated that it would not have returned the S5 had defendant requested it, because it had a "compelling interest in retaining the phone and its contents as evidence." Dkt. #195 at 7. As a result, defendant's possessory interest was not meaningfully affected by the delay between the seizure of the S5 and the extraction of the data on it. The phone had evidentiary value independent of its contents and would not have been returned to him regardless before the trial. In the totality of the circumstances, the delay was reasonable. Sullivan, 797 F.3d at 633.

### B. Seizure and Search of the Galaxy S6

The delay between the seizure of the S6 and the obtaining of a warrant to search it was approximately eight months. Defendant does not dispute that the government had a legitimate

interest in retaining and searching the S6. Sullivan, 797 F.3d at 633; see Dkt. #213 at 3-4. The government attributes the delay to its inability to unlock the S6. Dkt. #195 at 11; see Dkt. #197. That was true at the time that it obtained the first search warrant for the S6. However, the FBI had access to the required technology from August 30, 2017. No explanation is offered for the five additional months' worth of delay between August 2017 and the obtaining of a second search warrant on February 22, 2018. Dkt. #197 at ¶4.

Regardless, defendant had only a minimal possessory interest in the S6 at the time. He was in custody for the entire time between the seizure of the S6 on June 15, 2016 and the obtaining of the second search warrant on February 22, 2018. Dkt. #213 at 6. Sullivan, 797 F.3d at 633 ("Where individuals are incarcerated and cannot make use of seized property, their possessory interest in that property is reduced.") (citing Segura, 468 U.S. at 813); United States v. Johnson, No. 14-CR-00412-TEH, 2015 WL 4776096, at *6 (N.D. Cal. Aug. 13, 2015), aff'd, 875 F.3d 1265 (9th Cir. 2017) ("Defendant had … a virtually nonexistent possessory interest in the phone as a result of his ongoing custody."). In the totality of the circumstances, the delay between the seizure and search of the S6 was reasonable. Sullivan, 797 F.3d at 633 (citing Hernandez, 313 F.3d at 1213).

For all the foregoing reasons, defendant's motion with respect to the S5 and the S6 is DENIED. Defendant's motion with respect to the duffel bag is DENIED as moot.

DATED this 15th day of February, 2019.

Robert S. Lasnik
United States District Judge