The Honorable Robert S. Lasnik

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF WASHINGTON
# AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>   Plaintiff,<br><br>vs.<br><br>AUBREY TAYLOR,<br><br>   Defendant, | No. CR16-0300RSL<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

Aubrey Taylor, by and through his counsel, Michael G. Martin, submits this memorandum for the Court's consideration in determining the sentence to be imposed in this matter.

A jury convicted Mr. Taylor of one count of conspiracy to engage in sex trafficking of a minor, one substantive count of sex trafficking of a minor, and three substantive counts of sex trafficking of adult women. He faces a mandatory minimum sentence of 15 years in custody and up to life in prison. We respectfully submit that the factors set forth below (1) demonstrate that a 15 year sentence is both reasonable and sufficient but not more than is necessary to meet all the goals of sentencing; (2) that a sentencing departure below the advisory guideline range is appropriate; (3) and that mitigating factors exist that the Court must consider under the mandate in 18 U.S.C. Section 3553(a).

**A.      15 years in custody is both reasonable and sufficient but not more than is necessary to meet all the goals of sentencing**

In May 2016, a federal complaint was filed charging Mr. Taylor. While an arrest warrant was also issued at the same time, federal authorities did not seek to execute the warrant.[1] Local authorities arrested Mr. Taylor in June 2016. He wasn't taken into federal custody until October 14, 2016. As of the date of sentencing, Mr. Taylor will have been held at FDC SeaTac a total of 950 days, that is, 2 years, 7 months and 8 days.

Mr. Taylor anticipates that with a sentence of 15 years (180 months), credit for 31 months served to date and with goodtime, he will have approximately 122 months left to serve. This additional 10 years in custody is a lengthy sentence for any individual convicted of the most common federal offenses.

The advisory guideline as calculated by the probation office - life in prison - is greater than necessary, is not empirically based, and is so harsh that it arguably is cruel and unusual in violation of the Eighth Amendment to the United States Constitution. A guideline sentence, and even the sentence proposed by the government, would not promote justice or respect for law but, instead, would result in the opposite – injustice and disdain for the law.

Retired Justice Anthony Kennedy Spoke before the Senate Judiciary Committee on February 14, 2007 in response to Senator Whitehouse ("Our sentences are too long, our sentences are too severe, our sentences are too harsh... [and because there are so few pardons] there is no compassion in the system. There's no mercy in the system."); see also the July 9, 2006 Speech of Justice Anthony Kennedy at the Ninth Circuit Judicial Conference ("I think the guidelines are far too severe...The fact that the prison guards' association lobbies for higher

---

[1] Mr. Taylor now believes that federal authorities did not attempt to execute the warrant because one of the alleged victims, H.S., then a minor, had again run away from home and was not located until sometime in the Fall of 2016.

penalties is sick,"); *see also* the August 9, 2003 Speech of Justice Kennedy at the ABA Annual Meeting ("Our resources are misspent, our punishments too severe; our sentences too long... the sentencing guidelines are responsible in part for the increased terms....[and they] should be revised downward."); *United States v. Khan*, 325 F.Supp. 218, 227 (E.D.N.Y. 2004) (same); *United States. v. Ranum*, 353 F.Supp. 2d at 985 n.1 (quoting Justice Kennedy's statement that "our punishments [are] too severe, our sentences too long").

> At or near the root of virtually every serious criticism of the guidelines is the concern that they are too harsh, that federal law requires imposition of prison sentences too often and for terms that are too long...by any standard the severity and frequency of punishment imposed by the federal criminal process during the guideline era is markedly greater than it had been before...the length of imposed sentences has nearly tripled...as a consequence since the 1980's federal inmate populations have increased by more than 600%.

Frank O. Bowman, III, "The Failure of the Federal Sentencing Guidelines: A Structural Analysis" 105 *Colum. L. Rev*. 1315 (May, 2005)

> The fundamental and most powerful reform that must occur if we are to have any hope of reversing the imprisonment binge, is to reduce the severity of the sentences that are given. For many prisoners now sent to prison, this would mean probation or a short jail sentence; for others, it would mean less time spent in prison, as well as less time on parole.".

<u>Unlocking America, Why and How to Reduce America's Prison Population</u> (JFA Institute, November 2007) at p. 23.

Federal courts have routinely found that imposing a sentence within the sentencing guideline range is unduly harsh. See, e.g., *United States v. Hanson*, 561 F.Supp.2d 1004 (E.D. Wisc. 2008) (convicted of possession of child pornography where guideline range was calculated at 210-262 months, the court imposed a sentence of 72 months in part because the guideline range was "far greater than necessary to protect the public an deter defendant from re-offending"); *United States v. Adelson.* 441 F.Supp.2d 506 (SDNY 2006) (in a securities fraud

case where guidelines called for a life sentence, the court imposed a sentence of 42 months, noting that **"**where, as here, the calculations under the guidelines have so run amok that they are patently absurd on their face, a Court is forced to place greater reliance on the more general considerations set forth in section 3553(a), as carefully applied to the particular circumstances of the case and of the human being who will bear the consequences), aff'd by summary order (2nd Cir.) ("the record demonstrates that the District Court's decision to impose a below Guidelines sentence was not a failure or refusal to recognize the Guidelines, but rather a carefully considered reliance on the Section 3553(a) factors. In doing so the District Court satisfied the requirements we described in *Cavera*, and we therefore affirm the sentence"); *United States v. Antonakopoulos,* 399 F.3d 68, 81 (C.A.1, 2005) **("**History shows that the mandatory nature of the Guidelines has produced particular results which led trial judges to express that the sentences imposed were unjust, grossly unfair, or disproportionate to the crime committed, and the judges would otherwise have sentenced differently."); *Montanye v. United States*, 77 F.3d 226, 233 (8th Cir. 1996) (Bright, J., dissenting) ("By any ordinary measure outside the guidelines, I would think this sentence would be considered draconian, unnecessarily harsh and unreasonable*.").*

Courts have commonly described the United States Sentencing Guidelines as irrational and draconian, a scheme gone awry, and patently unfair for failing to take into account individual circumstances. See, e.g., *United States v. Andruska*, 964 F.2d 640, 646-47 (7th Cir. 1992)(Will, Senior Judge, concurring); *United States v. England*, 966 F.2d 403, 410 (8th Cir. 1992) (Bright, J., concurring); *United States v. Harrington*, 947 F.2d 956, 964 (D.C. Cir. 1991) (Edwards, J., concurring); *United States v. Cherry*, 487 F.3d 366 (6th Cir. 2007).

The Court can avoid imposing an unreasonably harsh sentence here by following the "parsimony provision" mandate contained in 18 U.S.C. Section 3553(a), imposing a lesser

sentence that is sufficient to achieve the purposes of sentencing and closer in length to the state court sentences imposed in similar cases. *Kimbrough v. United States,* 552 U.S. 85 (2007) (district court's below guideline sentence in drug case not unreasonable because "it appropriately framed its final determination in line with §3553(a)'s overarching instruction to 'impose a sentence sufficient, but not greater than necessary to accomplish the goals" of sentencing").

**B.     The guideline sentence is too long for the offense and does not promote respect for the law but derision of the law.**

Many courts have recognized that the sentences called for by the sentencing guidelines are too long and, instead of promoting respect for the law, encourages derision of the law. See, e.g., *Gall v. United States,* 552 U.S. 38 (2007), (where the defendant pled guilty to conspiring to distribute a large quantity of the drug ecstasy and to making a profit of $30,000 from his conduct and, but where he withdrew from conspiracy after 7 months, stopped using drugs, went to college and became businessman and rehabilitated himself, and where guidelines were 30-37 months, district court's sentence of probation was reasonable and "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law if viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing.").

Here the imposition of a life sentence as called for by the guidelines should be characterized as being unreasonably long and eminently unjust.  An unjust sentence makes a mockery of the criminal justice system, and any defendant so sentenced – as well as the public viewing the sentence – should be expected to react to such a sentence with disdain.  This Court can avoid such a reaction by recognizing the need to promote respect for the law, and then imposing the 15-year mandatory minimum sentence.

DEFENDANT'S SENTENCING MEMORANDUM
(Taylor, CR16-0300RSL) - 5
66526215.1

**C.     A sentence that is too long can be deleterious to public safety, can make a defendant anti-social and become a greater danger to society than when the offender entered prison, and can destroy communities.**

Mr. Taylor is African-American.  He grew up in an impoverished area where the population is primarily African-American.  Far too many of these young men end up in prison.  Courts have recognized the damage caused by the lengthy, mass incarceration of young men of color.  See, e.g., *United States v. Haynes,* 557 F.Supp.2d 200 (D. Mass. 2008) (where the defendant was convicted of selling drugs and court calculated the guideline range to be 33-41 months, the court sentenced the defendant to time served because public safety did not call for this sentence. "While public safety certainly calls for the incapacitation of some, there is another side to the equation, which, after *United States v. Booker*, 543 U.S. 220 (2005), may finally be given the serious consideration it deserves."  The court must "confront the inescapable fact that disadvantaged communities like Bromley-Heath are injured ***both*** by crime ***and*** by the subsequent mass incarceration of their young men.  *See* also, Testimony of Pat Nolan, Vice President of Prison Fellowship, before the The Joint Economic Committee of the U.S. Congress, "Mass Incarceration in the United States: At What Cost?", October 4, 2007:

> [M]ost inmates do not leave prison transformed into law-abiding citizens. In fact, the very skills inmates develop to survive inside prison make them anti-social when they are released... Certainly we need prisons to separate violent and dangerous people from the rest of society. But given the overcrowding and violence in our prisons, why on earth would we put people convicted of non-violent crimes in prison? Prisons are for people we are afraid of, but our sentencing laws have filled them with people we are merely angry at. Changing our sentences so that low risk offenders are punished in the community under strict supervision would reduce overcrowding in prisons and help control violence. It would hold low-risk offenders accountable without exposing them to the violence and the great difficulties of transition back to the community after their sentence.

A 15 year sentence is, of course, very long. When the Court is faced with imposing a sentence no less than 15 years and as long as life in prison, we submit that the Court must recognize that the

> Failure to limit the severity of punishment to what is deserved is unjust. It alienates citizens from the government and undercuts the effectiveness of law enforcement. When those who are punished are disproportionately poor and members of minority groups, it is inevitable that they will believe that the law is being used to repress them, rather than holding them accountable for their crimes.

<u>Unlocking America, Why and How to Reduce America's Prison Population</u> (JFA Institute, November 2007) at page 20.

"American-style incarceration, through the conditions it inflicts, produces the very conduct society claims to abhor and thereby guarantees a steady supply of offenders whose incarceration the public will continue to demand." Sharon Dolovich, Incarceration American Style, *Harvard Law & Policy Review*, Vol. 3, p 237 (2009). If one of the goals of sentencing is to ensure that Mr. Taylor will live up to the government's expectations and continue walking through the revolving door of the federal court system, then the imposition of a sentence of 20 years or more in custody makes perfect sense. Such a sentence will likely create a future offender who walks out the prison door a better criminal than he was when first arrested. A sentence longer than necessary to meet the goals of sentencing will create anger, frustration, and a burning sense of injustice, and when coupled with the crippling processes inherent in imprisonment would significantly reduce the likelihood that Mr. Taylor will be able to pursue a viable relatively conventional life after release. If, however, the Court wants to motivate Mr. Taylor to choose to change, then the sentence imposed must give him some feeling that he will still have a long, productive life to live upon release. A 15 year sentence incapacitates Mr. Taylor but also gives him reason to hope for the future – his own and that of his children.

### D. Lack of Guidance as a Youth

Mr. Taylor's parents – his father as a drug dealer and currently in prison, his mother an addict and a prostitute – set the stage for his actions later in life. He grew surrounded by alcohol, drugs, gangs and pimping, and by age 9 the life he experienced became the life he desired. Is there any question that the lack of guidance and his home environment led him to where he is today? The failure of his parents to provide the right guidance during his most impressionable years doomed him. Based on this, the sentence imposed should "reflect an individualized assessment of a particular defendant's culpability rather than a mechanistic application of a given sentence to a given category of crime." *United States v. Floyd*, 945 F.2d 1096 (9th Cir. 1991) (in drug case, court affirms departure from guideline range of 30 years to life to 17 years because of defendant's abandonment by his parents and lack of guidance as a youth –rendering defendant less culpable).

### E. The Defendant's Criminal History Overstates His Propensity To Commit Crimes

Mr. Taylor's criminal history score is misleading and overstated his propensity to commit crimes (1) because of the two-point adjustment for being on supervision at the time of an offense and (2) a calculation error that resulted in two points, not 1 as Mr. Taylor believes is accurate. 6 criminal history points would place him in Category III, not IV as calculated by the probation service. See, e.g., *United States v. Jimenez-Gutierrez,* 491 F.3d 923 (8th Cir. 2007) (where defendant given 2 points in criminal history score for prior drug offense because given 120 days custody on suspended sentence which was more than 60 days under guidelines, but where he actually served only 57 days, could give below guidelines sentence because guidelines overstated the defendant's criminal history).

/

/

/

**F.   A lengthy term of monitoring on supervised release makes a longer prison sentence unnecessary, reduces the risk of recidivism and deters future crime**

The Court is authorized to impose a term of supervised release for a term of up to life. Rather than imposing a term of imprisonment far longer than the 15-year mandatory minimum, we submit that a shorter term of imprisonment followed by a longer term of supervision makes more sense, will assist Mr. Taylor in reintegrating into his community, thereby reducing his risk of recidivism.  See, e.g, *United States v. Pauley*, 511 F.3d 468 (4th Cir.  2007) (where client pled to possession of child pornography, with a guideline range of 78-97 months; the court's downward variance to 42 months affirmed in part because, as district court noted, that "a lifetime of supervised release would reduce the risk of Pauley becoming a repeat offender and would deter him from future criminal conduct...[is a ]valid consideration[] under § 3553(a)".

**G.   The sentence proposed by probation and the government is longer than necessary to provide drug treatment in prison**

Mr. Taylor has been a heavy user of marijuana.  To the extent his marijuana use contributed to his actions resulting in this conviction, participation in and graduation from the BOP RDAP for his drug use can be completed in far less than 3 years.  Since the Court cannot impose a sentence less than 15 years, the imposition of a sentence far exceeding the mandatory minimum will have no additional positive effect on his recovery.  See, e.g., *United States. v. Yopp*, 453 F.3d 770, 773 (6th Cir. 2006) (where the defendant violated supervised release, and judge wanted him only to participate in the 500 hour RDAP program which would require 12 months to be enrolled and complete, "the twenty-four month sentence...[was] substantively plainly unreasonable because it [was] "greater than necessary to comply with the purposes set

forth in [ § 3553(a)(2) ]" where only 12 months sentence necessary to assure treatment in 500 hour drug abuse program.).

**H.      Disparity In Sentencing**

Title 18 U.S.C. Section 3553 requires that the Court avoid unwarranted sentencing disparity. Since there are no codefendants in this case, Mr. Taylor submits that looking at similar cases prosecuted in both state and federal court will be of assistance to the Court in avoiding unwarranted sentencing disparity.

The base sentencing guideline for promoting commercial sexual abuse of a minor in violation of RCW 9.68A.101 is 93 to 123 months in prison. More strikingly, the crime of promoting prostitution in the first degree in violation of RCW 9A.88.070—which includes a force or threat element—carries with it only a 21 to 27 month sentence.

The importance of creating parity between this case and similar state court cases is perhaps best demonstrated by consideration of *State v. Walker*, 16-C-02847-7-SEA, in which Martrice Walker was sentenced to only 19.5 months in prison for trafficking multiple women, including a 16-year old minor. Walker assaulted the 16-year old victim weekly and on several occasions hit her over the head with a handgun. Walker told the juvenile victim that he would kill her if he refused to walk the track and that if she talked to the police or FBI, he would kill her and every single member of her family. Furthermore, Walker had an extensive criminal history, far more extensive that Mr. Taylor's record.

A review of comparable cases in the Western District of Washington reveals the following. In *United States v. Young*, CR14-5242RJB (W.D. Wash. 2016), the defendant was charged with multiple charges of trafficking by force, fraud, or coercion pled guilty under Rule

11(c)(1)(C) to 90 months' imprisonment for a transportation charge).  In *United States v. Eskridge*, CR14-5050BHS (W.D. Wash. 2014), the defendant was charged with possession of child pornography and sex trafficking of a minor and pled guilty to one count of possession of child pornography.  The Court sentenced him to 100 months in prison).  In *United States v. Cyprian*, CR14-236RSL (W.D. Wash. 2014), the defendant was charged with multiple crimes including sex trafficking through force, fraud, and coercion pled guilty to two sex trafficking counts and sentenced to 92 months in prison).  See also, *United States v. Marlon Tramble*, CR10-199RSM (120 months in prison); *United States v. Ronnie Tramble*, CR11-250JCC (180 months in prison); *United States v. Irvin*, CR11-5408RJB (180 months in prison); *United States v. Manago*, CR14-23RSM (120 months in prison); *United States v. Nash*, CR09-5065RJB, (sentenced to 169 months in prison, relevant conduct at sentencing included trafficking of a juvenile and possession of child pornography); and *United States v. Bonds*, CR14-74JCC (120 months in prison).

Mr. Taylor's case is readily and easily distinguishable from other defendants who have received lengthier sentences than those described above. This Court referred to the case of *United States v. David Delay* numerous times at hearings in Mr. Taylor's case.  After conviction by a jury, this Court sentenced Delay to a sentence of 396 months in prison. The Delay case, however, is materially distinguishable from the allegations against Mr. Taylor.  Delay was "predatory and exploitative." *United States v. Delay*, CR1500175RSL, Dkt. No. 567 (April, 2018). Delay trafficked in dozens of juvenile and otherwise vulnerable women. He sexually abused and degraded his victims—forcing some to urinate on themselves and drink urine, and branding one woman. He forced his victims to create, and then distributed, child pornography. He then used these materials to blackmail his juvenile victims into continuing to engage in

escorting. Delay faked paternity test results to coerce one victim into maintaining a sexual relationship with him and working for him as a prostitute. By the time the truth about the paternity was revealed, her child was 10-years old and had believed that Delay was her father and that his adult children were her step-siblings. Delay further possessed child pornography depicting the ten-year-old child of his former girlfriend. Finally, after he was charged, Delay used a Facebook account to publicly identify his victims and accuse them of crimes, further victimizing his victims and causing and lasting damage and distress. Given Delay's conduct, it would be an understatement to say that the Delay case far pales in comparison the conduct alleged against Mr. Taylor.

Other cases similar to the Delay case may also assist the Court in its disparity analysis. In *United States v. Todd*, CR07-395JLR, the defendant was sentenced after trial to 26 years' imprisonment for using violence to traffic four adult women. Todd enforced his pimp rules physically by beating one victim from "from head to toe," blacking one of her eyes and chipping one of her teeth. When she was two and a half months pregnant, he demanded that she abort the child, and she complied. *See United States v. Todd*, 627 F.3d 329, 331 (9th Cir. 2010). In addition, Mr. Todd's criminal history was extensive, and he had been arrested and/or charged with criminal offenses in 27 separate instances over the 14 years prior to the federal sex trafficking charge. Todd Sentencing Memo, Dkt. No. 154. The facts of the Todd case are readily distinguishable from the allegations against Mr. Taylor, both in terms of violence and criminal history.

The facts of *United States v. Vianez* are similar to those in *Todd*, and are distinctly dissimilar to the allegations against Mr. Taylor. *See generally United States v. Vianez*, CR09-5065RJB. Vianez was sentenced to 20 years in prison after trial. Unlike the allegation against Mr. Taylor, Vianez knowingly trafficked *multiple* minors. Additionally, Vianez trafficked one minor on multiple occasions over a period of several years and subjected her to repeated, regular

severe beatings, including at point pistol whipping her on one occasion for violating his rules. Vianez also required a victim to strip naked in front of his pimp friends, kicked and hit her, made her crawl on the gravel driveway from the garage to the house, forced her to put rocks in her mouth, and allowed another pimp to put out his cigarette on her body. At one point, Vianez beat a victim so severely that she was required to undergo emergency surgery. The physical injuries she sustained included a crushed eye socket, broken thumb, broken wrist, broken nose, and five of her teeth had been smashed in. Thus, this case too represents egregious conduct simply not present in the allegations against Mr. Taylor.

Finally, in *United States v. Powell*, CR15-244RAJ, the defendant was convicted after trial of extensive trafficking and abuse of three women and *two* juveniles and sentenced to 16.5 years in prison.

This Court has discretion under 18 U.S.C. §3553 to consider that state penalty for same conduct was less serious. *United States v. Ringgold*, 571 F.3d 948 (9th Cir. 2009; *United States v. Clark*, 434 F.3d 684, 687 (4th Cir. 2006) ("[T]he consideration of state sentencing practices [by federal sentencing judges] is not necessarily impermissible per se."); *United States. v. Wilkerson*, 411 F.3d 1 (1st Cir. 2005) (where district judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account...," case remanded for resentencing in part because under *Booker*, "the need to avoid unwarranted sentencing disparities" is among the factors to be considered by the now advisory Guidelines). Taking into consideration this Court's experience in both state and federal court, as well as the other cases prosecuted in this District cited above, the imposition of a 15 year sentence is reasonable.

# CONCLUSION

Whatever sentence this Court imposes, it must be just. Mercy and compassion are a part of justice. Imposition of a sentence longer than the 15 year mandatory minimum appears to be nothing more than retribution without careful consideration of the mandate of Title 18 U.S.C. Section 3553(a) and the none factors set therein. Mr. Taylor prays that the Court will see through the arguments for retribution and impose the only reasonable sentence available – 15 years in custody.

RESPECTFULLY SUBMITTED this 14th day of May, 2019.

*/s Michael G. Martin*_____
Michael G. Martin, WSBA No. 11508
Counsel for Aubrey Taylor
Siderius Lonergan & Martin LLP
500 Union Street, Suite 847
Seattle, WA 98101
(206) 624-2800
Fax (206) 624-2805
Email: michaelm@sidlon.com

# **CERTIFICATE OF SERVICE**

I hereby certify that May 14, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the attorney(s) of record for the United States.

*/s Michael G. Martin*